UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VANESSA K. NEALY,

        Plaintiff,                      CIVIL ACTION NO. 13-10684

     v.                                    DISTRICT JUDGE ARTHUR J. TARNOW

                                         MAGISTRATE JUDGE MARK A. RANDON

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.
_____/

## REPORT AND RECOMMENDATION
## ON CROSS MOTIONS FOR SUMMARY JUDGMENT (DKT. NOS. 12, 15)

Plaintiff Vanessa K. Nealy challenges the Commissioner of Social Security's ("the Commissioner") final denial of her benefits application. Cross motions for summary judgment are pending (Dkt. Nos. 12, 15). Judge Arthur J. Tarnow referred the motions to this Magistrate Judge for a Report and Recommendation (Dkt. No. 4).

### I.   RECOMMENDATION

Because substantial evidence supports the Administrative Law Judge's ("ALJ") decision, this Magistrate Judge **RECOMMENDS** that Plaintiff's motion for summary judgment be **DENIED**, the Commissioner's motion for summary judgment be **GRANTED**, and the Commissioner's findings be **AFFIRMED**.

### II.   DISCUSSION

#### A.   *Framework for Disability Determinations*

Under the Social Security Act, (the "Act") Disability Insurance Benefits and Supplemental Security Income are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability," in relevant part, as

the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps . . . . If the analysis reaches the fifth step without a finding that the claimant is disabled, the burden transfers to the [Commissioner]." *Preslar v. Sec'y of HHS*, 14 F.3d 1107, 1110 (6th Cir. 1994).

### B.     *Standard of Review*

This Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited such that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has

failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal quotation marks omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses") (internal quotation marks omitted)). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted); *see also Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted) (explaining that if the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion"); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes . . . a zone of choice within which the decisionmakers can go either way, without interference by the courts" (internal quotation marks omitted)).

When reviewing the Commissioner's factual findings for substantial evidence, this Court is limited to an examination of the record and must consider that record as a whole. *Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007); *Wyatt v. Sec'y of HHS*, 974 F.2d 680, 683 (6th Cir. 1992). The Court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston*, 245 F.3d at 535. There is no requirement, however, that either the ALJ or this Court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all the evidence without directly addressing in [her] written decision every piece of

-3-

evidence submitted by a party") (internal quotation marks omitted).  Further, this Court does "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass*, 499 F.3d at 509; *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant").

### III.   REPORT

#### A.   *Administrative Proceedings*

Plaintiff applied for supplemental security income on October 20, 2010, alleging she became disabled on January 18, 2010 (Tr. 14).  After the Commissioner initially denied Plaintiff's application, she appeared with counsel for a hearing before ALJ Roy L. Roulhac, who considered the case *de novo*.  In a written decision, the ALJ found Plaintiff was not disabled (Tr. 14-21).  Plaintiff requested an Appeals Council review (Tr. 7-9).  On January 9, 2013, the ALJ's findings became the Commissioner's final administrative decision when the Appeals Council declined further review (Tr. 1-3).

#### B.   *ALJ Findings*

The ALJ applied the five-step disability analysis to Plaintiff's claim and found at step one that she had not engaged in substantial gainful activity since her application date of October 20, 2010 (Tr. 16).

At step two, the ALJ found that Plaintiff had the following "severe" impairments: chronic pain syndrome and asthma (Tr. 16).

At step three, the ALJ found that Plaintiff did not have impairments that met or medically equaled one of the listings in the regulations (Tr. 16).

Between steps three and four, the ALJ found that Plaintiff had the Residual Functional Capacity ("RFC") to perform:

>light work . . . except she can occasionally climb ramps and steps, balance, stoop, kneel, crouch, and crawl. She needs a sit/stand option at will and must avoid concentrated exposure to chemicals, dusts, fumes, and gases.

(Tr. 16).

At step four, the ALJ found that Plaintiff could not perform her past relevant work as a fast food worker (Tr. 20).

At step five, the ALJ found Plaintiff was not disabled because there are a significant number of jobs available in the national economy that Plaintiff could perform such as information clerk, hand packager, or small products assembler (Tr. 20-21).

### C.     *Plaintiff's Hearing Testimony and Statements*[1]

Because Plaintiff's claims of error relate to the ALJ's consideration of her asthma, this Magistrate Judge focuses solely on that aspect of her testimony.

For more than a year, Plaintiff worked in the fast-food industry for Kentucky Fried Chicken (Tr. 41). She experienced smoke inhalation and stopped working; her workers' compensation claim is pending (Tr. 31). Plaintiff has trouble breathing after walking or running long distances, and she can only perform any particular task for 13-14 minutes before she has difficulty breathing (Tr. 32, 43, 49). Plaintiff attempted to work at another job, but could not stand the smell of chemicals in the work environment (Tr. 42). Plaintiff uses ProAir and an Albuterol inhaler to help control her asthma (Tr. 33, 52).

### D.     *Plaintiff's Claims of Error*

---

[1] Plaintiff's testimony before the ALJ reflects her subjective view of her medical condition, abilities, and limitations. It is set forth from Plaintiff's perspective; it is not a factual finding of the ALJ or this Magistrate Judge.

-5-

Plaintiff argues that the ALJ made two errors: (1) he failed to properly assess the impact of Plaintiff's asthma on her ability to work; and, (2) he failed to give proper deference to the opinion of Plaintiff's treating physician.  Plaintiff's claims of error are without merit.

### 1. Plaintiff's Asthma and Her Ability to Walk Long Distances

Plaintiff's first argument is as follows:

> *Plaintiff testified* that her primary difficulty with walking was not pain, but instead the fact that she quickly ran out of breath doing it.  *She reported* to Dr. Pierre that "when she walks to[sic] far she can't catch her breath."  *She also gave a history* at St. Joseph Mercy Hospital in January 2010 that she could not get a "full breath," particularly on exertion.  When seen by Dr. Raffee, *plaintiff indicated* that she could not walk for prolonged distances due to her asthma.  This has been a consistent history, but it was never addressed by the ALJ.  Consultative examiner Dr. Elfallal also noted that plaintiff could only walk half a block before becoming short of breath.

(Dkt. No. 12 at p. 11 (CM/ECF)) (emphasis added) (footnote and internal citations omitted).  While Plaintiff represents that Dr. Elfallal noted her ability to only walk half a block, a review of the evaluation reveals it was based on her self-reported claim: "*[Plaintiff] state[d]* that she can only walk half a block without being short of breath" (Tr. 249) (emphasis added).  As such, Plaintiff's argument is based entirely on her subjective complaint that her asthma prevents her from walking long distances and lacks medical support.

Plaintiff's self-reported limitations may be used to establish disability in certain situations.  *Young v. Sec'y of HHS*, 925 F.2d 146, 151 (6th Cir. 1990); *see also Cagle v. Astrue*, 2012 WL 3201960, at *6 (E.D. Tenn. July 16, 2012):

> When a Plaintiff attempts to establish disability based on subjective complaints, she must provide objective medical evidence of an underlying medical condition that either confirms the severity of the alleged symptoms or indicates the condition reasonably could be expected to cause symptoms as severe as alleged. If the objective medical evidence alone does not confirm the allegations of disabling symptoms, the ALJ must evaluate all other evidence to determine to

-6-

> what extent, if any, the alleged symptoms limit the claimant's work capacity. The absence of sufficient objective medical evidence makes credibility a particularly relevant issue, and in such circumstances, this court will generally defer to the Commissioner's assessment when it is supported by an adequate basis.

(Internal quotations and citations omitted). But she does not provide any evidence in support of her subjective complaint. Instead, the evidence reveals Plaintiff's asthma was mild and under control. For example, on January 13, 2010, Plaintiff's lungs were clear to auscultation bilaterally; her respirations were non-labored; she reported that her breathing was better after treatment; and, she could breath without difficulty (Tr. 203, 208-209, 534-535, 537, 545, 568, 589-591). The following day, Plaintiff continued to breath without difficulty (Tr. 536, 592).

On February 11, 2010, Plaintiff was diagnosed with minimal obstructive airways disease and borderline methacholine challenge; her lung volumes were within normal limits (Tr. 307).

On January 15, 2011, Plaintiff had a high respiratory rate, but her lungs were clear to auscultation bilaterally without any adventitious sounds (Tr. 250-251).

On February 18, 2011, Plaintiff's chest examination was normal: her lungs were clear to auscultation and percussion (Tr. 254, 257). Jack Solomon, M.D. determined that Plaintiff had asthma "which [was] apparently controlled on her current medications" (Tr. 254).

On March 15, 2011, Plaintiff's lungs were clear to auscultation and percussion with good air exchange. Plaintiff had symmetrical expansion of the airways and no prolongation of expiratory or inspiratory phases of respiration. William S. Gonte, M.D. found as follows:

> It appear[ed] that last January, [Plaintiff] probably developed an upper respiratory tract infection and had an exacerbation of her asthma and became intolerant of smoke and solvents and cold weather. She was evaluated in the hospital on one occasion and started on medications. On today's examination, she appeared asymptomatic, though she state[d] she [was] having a "bad day." Her examination was relatively normal.

(Tr. 284). According to Dr. Gonte, Plaintiff was capable of returning to her usual work activities without any restrictions (Tr. 284).

On April 10, 2011, Plaintiff's frontal and lateral projections demonstrated clear lung fields; she could breath without difficulty; denied difficulty with reported respiratory symptoms; her lungs were clear to auscultation; respirations were non-labored; and, breathe sounds were equal (Tr. 314, 317, 363, 366, 373-376, 387, 427, 462-463, 465-466).

On April 11, 2011, Plaintiff's lungs were clear; respirations were no-labored; and, she had not used her inhaler for a couple days. In addition, Plaintiff continued to breathe without difficulty; and, she denied difficulty with reported respiratory symptoms (Tr. 369-370, 376, 437, 467).

The evidence supports the ALJ's RFC determination that Plaintiff must avoid concentrated exposure to chemicals, dusts, fumes, and gases. For example, on January 23, 2010, Dr. Jean-Marie Pierre, M.D., Plaintiff's treating physician, restricted Plaintiff from exposure to smoke, fumes, solvents, and other chemicals. Specifically, Dr. Pierre stated that Plaintiff "will need to work in an atmosphere free of smoke, fumes, solvents or other chemicals, dust, cold environment, [and] extreme humidity" (Tr. 224).

On February 10, 2010, Dr. Pierre diagnosed Plaintiff with acute exacerbation of asthmatic bronchitis and prolonged exposure to smoke and solvents (Tr. 221).

On March 3, 2011, consultative examiner Donald H. Kuiper, M.D., found that "[e]nvironmental restrictions appear warranted based on asthma" (Tr. 62). Specifically, Plaintiff

should avoid concentrated exposure to extreme cold; and, moderate exposure to humidity, fumes, odors, dusts, gases, and poor ventilation (Tr. 65).[2]

Finally, the ALJ's RFC determination included the option to sit and stand at will. Therefore, this Magistrate Judge finds the ALJ's determination is supported by substantial evidence and should not be disturbed on appeal.

### 2. Treating Source Rule

Dr. Pierre opined that Plaintiff could only stand for one hour per eight-hour work day, lift and carry 10 pounds, push 30 pounds, pull 20 pounds, occasionally bend, walk for 30 minutes per eight-hour work day, sit for up to three hours, and perform fine manipulations for one hour per eight-hour work day (Tr. 356-357). Plaintiff argues that the ALJ failed to give proper deference to Dr. Pierre's opinions.

The Sixth Circuit has recently made clear that opinions on issues reserved to the Commissioner are not entitled to any particular weight:

> [A] treating physician's opinion is only entitled to . . . deference when it is a *medical opinion*. If the treating physician instead submits an opinion on an issue reserved to the Commissioner – such as whether the claimant is disabled, unable to work, the claimant's RFC, or the application of vocational factors – his decision need only explain the consideration given to the treating source's opinion. The opinion, however, is not entitled to any particular weight.

*Johnson v. Comm'r of Soc. Sec.*, ___ F. App'x ___, 2013 WL 5613535, at *7 (6th Cir. Oct. 15, 2013) (emphasis in original) (internal citations and quotations omitted); *see also Shelby v. Comm'r of Soc. Sec.*, No. 1:12-cv-770, 2013 WL 6157988, at *6 (S.D. Ohio Nov. 25, 2013):

---

[2]The ALJ did not include in his RFC determination the need to avoid cold environments, extreme humidity, or poor ventilation, but Plaintiff does not argue that the ALJ erred in this respect. *See Greene v. Comm'r of Soc. Sec.*, No. 12-14434, 2013 WL 5676247, at *4 n. 2 (E.D. Mich. Oct. 18, 2013) ("[a]ny issue not raised directly by Plaintiff is deemed waived") (citing *United States v. Campbell*, 279 F.3d 392, 401 (6th Cir. 2002).

> The regulations specifically state that the responsibility for assessing a claimant's RFC rests with the ALJ. The Sixth Circuit has noted an RFC is an assessment of what [a claimant] can and cannot do, not what [] he does and does not suffer from. The ALJ must resolve the conflicts in the evidence and incorporate only the credible limitations of record in the RFC finding. Statements about what a claimant can still do despite [her] impairments are important evidence that must be considered in assessing a claimant's RFC, but such statements are not determinative. Opinions on some issues, such as a claimant's RFC, are not medical opinions, but are, instead, opinions on issues reserved for the Commissioner because they are administrative findings that are dispositive of the case; i.e., that would direct the determination or decision of disability. Thus, an ALJ's RFC finding does not need to mirror the opinion of a treating, examining, or non-examining physician.

(Internal citations and quotations omitted); *Littleton v. Comm'r of Soc. Sec.*, No. 5:12 CV 2756, 2013 Wl 6090816, at *11 (N.D. Ohio Nov. 19, 2013) (opinions on issues reserved for the Commissioner "need not be as exacting as the 'good reasons' rule regarding the medical opinions of treating physicians contained in 20 C.F.R. § 404.1527(c)(2)").

The ALJ considered Dr. Pierre's RFC assessment and explained that it was entitled to little weight "as the limitations are not supported by [Plaintiff's] medical records, including the treatment notes of Dr. Pierre or her physical exam at her consultative examination" (Tr. 20). He was not required to afford any particular weight to Dr. Pierre's opinion. As such, the ALJ's decision is supported by substantial evidence and should not be disturbed on appeal.

## IV.    CONCLUSION

Because substantial evidence supports the ALJ's decision, this Magistrate Judge **RECOMMENDS** that Plaintiff's motion for summary judgment be **DENIED**, the Commissioner's motion for summary judgment be **GRANTED**, and the Commissioner's findings be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28

U.S.C. § 636(b)(1).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation.  *McClanahan v. Comm'r Soc. Sec.*, 474 F.3d 830 (6th Cir. 2006) (internal quotation marks omitted); *Frontier*, 454 F.3d at 596-97. Objections are to be filed through the Case Management/Electronic Case Filing (CM/ECF) system or, if an appropriate exception applies, through the Clerk's Office.  E.D. Mich. LR 5.1. A copy of any objections is to be served upon this Magistrate Judge but this does not constitute filing.  E.D. Mich. LR 72.1(d)(2). Once an objection is filed, a response is due within fourteen (14) days of service, and a reply brief may be filed within seven (7) days of service of the response.  E.D. Mich. LR 72.1(d)(3), (4).

                                                s/Mark A. Randon  
                                                Mark A. Randon  
                                                United States Magistrate Judge

Dated:  January 22, 2014

### *Certificate of Service*

      *I hereby certify that a copy of the foregoing document was mailed to the parties of record on this date, January 22, 2014, by electronic and/or ordinary mail.*

                                                *s/Eddrey Butts*  
                                                *Case Manager for Magistrate Judge Mark A. Randon*